PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANET YOUNG, *etc.*, | ) | |
| | ) | CASE NO.  4:14CV0974 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CARRIER CORPORATION, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | [Resolving ECF No. 15] |

Pending is Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 15).  The

Court has been advised, having reviewed the record, the parties' briefs and the applicable law.

For the reasons set forth below, the Court grants the motion.

## I. Background

In May 2009, Plaintiff Janet Young purchased a new Carrier Corporation air conditioning

unit from Advanced Heating, Cooling & Electric of Warren, Ohio.  Her unit featured a standard

copper evaporator coil, which came with a five-year parts limited warranty that would cover

replacement if the coil ever failed.  Defendant's five-year "Limited Warranty for Evaporator

Coils" (ECF No. 15-1) provides, in pertinent part:

> CAC/BDP (hereinafter "Company") warrants this product against failure due to
> defect in materials or workmanship under normal use and maintenance as follows.
> All warranty periods begin on the date of original installation.  *If a part fails due
> to defect during the applicable warranty period Company will provide a new or
> remanufactured part, at Company's option, to replace the failed defective part at
> no charge for the part.*  Alternatively, and at its option, the Company will allow a
> credit in the amount of the then factory selling price for a new equivalent part
> toward the retail purchase price of a new Company product.  Except as otherwise

(4:14CV0974)

> stated herein, *those are Company's exclusive obligations under this warranty for a product failure.*  This limited warranty is subject to all provisions, conditions, limitations and exclusions listed below and on the reverse (if any) of this document.

ECF No. 15-1 at PageID #: 127 (emphasis added).

Plaintiff's air conditioning unit functioned properly for roughly four years, after which point the evaporator coil allegedly developed a leak and needed to be replaced.  The copper evaporator coil was replaced with a non-copper coil in May 2013, which Defendant paid for, and Plaintiff has not alleged that her unit or its evaporator coil has since malfunctioned.

On February 26, 2014, Plaintiff Janet Young brought this lawsuit individually and as a class action on behalf of other putative classes of Ohio and nation-wide residents who purchased Carrier air conditioner units with allegedly defective copper coils.  This action against Defendant Carrier Corporation was brought in the United States District Court for the Southern District of Ohio.  *Young v. Carrier Corporation*, No. 1:14-cv-00183.  On April 14, 2014, the parties filed a joint stipulation pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) dismissing the lawsuit without prejudice so that Plaintiff could re-file in the Northern District of Ohio, where all of the underlying facts related to her purchase of the unit took place.  The Class-Action Complaint (ECF No. 1), filed on May 5, 2014, sets forth the following eight claims for relief:

I - Breach of Express Warranty;

II - Breach of Implied Warranty in Tort;

III - Negligent Failure to Warn;

IV - Negligent Design;

2

(4:14CV0974)

V - Failure to Warn Under Ohio Rev. Code § 2307.76 of the Ohio Product Liability Act ("OPLA");

VI - Unjust Enrichment;

VII - Fraudulent Concealment; and

VIII - Declaratory Relief.

Plaintiff alleges the existence of a contract and that Defendant breached its warranty when it delivered her unit.  Plaintiff alleges that the limited warranty Carrier Corporation provides for its evaporator coils "failed its essential purpose because the Defendant's air conditioners contained defective evaporator coils that were defective *at the time Plaintiff and class members acquired* their air conditioners and evaporator coils."  ECF No. 1 at PageID #: 19, ¶ 80 (emphasis added).

The Class-Action Complaint (ECF No. 1) also provides:

37.  But in 2006, Defendant copyrighted a report entitled, *Quality, Reliability and Safety, Standards and Testing Ensure Reliable Performance* that discussed Defendant's Standards and Testing for split air-conditioning systems.  Defendant now warranted the superiority of its evaporator coils:
> Not all coils are created equally, so you run the risk of creating durability and efficiency problems when using off-brand coils. Carrier coil and furnace design changes are coordinated to make the two work together properly.  For example, a coil could make a main safety limit nuisance trip, or a coil drain pan could get too hot.  All of these potential problems are addressed before new models are produced.  With a Carrier coil, you get peace of mind knowing the coil and furnace are designed to maintain performance, efficiency and durability.

38.  Defendant also represented and warranted that it subjected its products to corrosion testing:
> **CORROSION TESTING**
> Carrier spends significant time qualifying its materials for corrosion resistance.  It doesn't really matter how good the internal components perform if the cabinet cannot withstand the

3

(4:14CV0974)

> environmental elements.  Because the American Society for
> Testing and Materials (ASTM) is accepted worldwide, Carrier uses
> their test methods of continuous salt fog and prohesion testing.
> These two accelerated test methods are extremely brutal on the
> unit.  These tests have been instrumental in developing units
> specifically designed for harsh coastal conditions.

39.  Defendant also claimed that it conducted engineering and design testing for
evaporator coils, including cabinet sweating, condensate disposal, coil wettability,
airflow performance, and safe transit tests.  According to Defendant,   ”[e]very
unit is checked for coil leaks.”  While   ”[m]ost manufacturers allow up to .25
ounce of leakage per year—or one ounce every four years, Defendant's <u>stringent
standards allow only one ounce of leakage in 10 years</u>.  Specially designed service
valves ensure against leaks.”

ECF No. 1 at PageID #: 9-10 (underline added).

Plaintiff's allegedly defective copper evaporator coil was replaced with a non-copper coil

and, pursuant to the warranty, Defendant paid for the part.  Paragraph 60 provides:

> In September 2013, Plaintiff's air conditioner stopped cooling again.  Ainsley
> [Heating and Cooling] performed a leak test and determined that the evaporator
> coil was leaking.  Ainsley replaced the defective evaporator coil with a new
> non-copper coil, model/serial number of CNPV2417ALAAAAA and
> 3113X39819.  Plaintiff paid $816.00 for Ainsley's service, which consisted of
> $307.00 for refrigerant, $80.00 for Ainsley's service call and $429.00 for labor.
> Defendant paid for the defective evaporator coil but refused to pay for the
> refrigerant, the labor, or service call.

ECF No. 1 at PageID #: 14.

Finally, Paragraph 77 provides the basis for her class-action claims.  It states:

> And although Defendant knew its evaporator coils were defective, it took no steps
> to warn or alert Plaintiff and class members.  Instead, Defendant continued to sell
> its defective air conditioners to Plaintiff and class members and "fixed" and
> replaced failed evaporator coils with similarly defective evaporator coils.

ECF No. 1 at PageID #: 19.

## II.  Standard of Review

4

(4:14CV0974)

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

### III.  Analysis

**A.  Plaintiff's Claim for Breach of Express Warranty Alleging That the Warranty "Fails of its Essential Purpose" (Count I) is Time-Barred.**

5

(4:14CV0974)

Plaintiff's primary claim for breach of express warranty (Count I) is dismissed for two independent reasons.  First, her claim is time-barred by Ohio's four-year statute of limitations for economic-loss claims that arise out of a transaction for the sale of goods.  *See* Ohio Rev. Code § 1302.98(A).[1]  Second, assuming *arguendo* that Plaintiff's claim is timely, her admission that Defendant replaced her allegedly defective evaporator coil with a new non-copper coil part under her warranty, ECF No. 1 at PageID #: 14, ¶ 60, dooms her express warranty claim.  Defendant complied with the terms of its five-year limited warranty.  Plaintiff cannot establish breach as a matter of law because replacement of the defective evaporator coil was Defendant's only obligation under the terms of her warranty.  ECF No. 15-1 at PageID #: 127.

Plaintiff alleges at ¶ 80 of the Class-Action Complaint (ECF No. 1) that Defendant breached its warranty on the day in May 2009 when she first received her Carrier air conditioner unit and evaporator coil.  *See* Ohio Rev. Code § 1302.98(B) ("A cause of action accrues when the breach occurs, *regardless of the aggrieved party's lack of knowledge of the breach*.") (emphasis added).  From that day, Plaintiff had four years—until May 2013—to file her lawsuit. She waited nine months too long by filing it in February 2014 .

---

[1]  The Uniform Commercial Code's four-year limitations period, as adopted in Ohio, is Ohio Rev. Code § 1302.98(A).  It states:  "An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.  By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it."

6

(4:14CV0974)

Defendant refers to the report entitled, *Quality, Reliability and Safety, Standards and Testing Ensure Reliable Performance* (ECF No. 23-1 at PageID #: 191-214),[2] as a 2006 White Paper describing Carrier's testing standards, procedures, and quality-control processes for leaks at the time of manufacture.  Plaintiff does not allege that she ever saw, let alone read or heard, any reference to the report, much less to the specific sentence quoted at ¶ 37 of the Class-Action Complaint (ECF No. 1).  Defendant argues that it neither factually, nor legally, creates a 10-year express warranty.  The Court agrees with Defendant that the 2006 White Paper does not satisfy the criteria set forth in Ohio Rev. Code § 1302.26(A)[3] for the creation of an express warranty because it is not part of the basis of Plaintiff's bargain.  ECF No. 23 at PageID #: 176-78.

*Holbrook v. Louisiana-Pacific Corp.*, 533 Fed. App'x 493 (6th Cir. 2013)—a case that Plaintiff

---

[2]  The 24-page report directed to distributors and dealers of Defendant's units is attached to the Declaration of John J. Gibbons.  ECF No. 23-1 at PageID #: 190.  In resolving Rule 12(b)(6) motions, courts "may consider the Complaint and . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Because the report is directly referred to, and quoted, by Plaintiff's Class-Action Complaint (*see* ECF No. 1 at PageID #: 9-10, ¶¶ 37-39), the Court may consider it for purposes of the within Motion to Dismiss.  *See Asp v. Toshiba Am. Consumer Prods., LLC*, 616 F. Supp. 2d 721, 724 n.1 (S.D. Ohio 2008).

[3]  (A) Express warranties by the seller are created as follows:
(1) Any affirmation of fact or promise *made by the seller to the buyer* which relates to the goods *and becomes part of the basis of the bargain* creates an express warranty that the goods shall conform to the affirmation or promise.
(2) Any description of the goods *which is made part of the basis of the bargain* creates an express warranty that the goods shall conform to the description.
(3) Any sample or model *which is made part of the basis of the bargain* creates an express warranty that the whole of the goods shall conform to the sample or model.
Ohio Rev. Code § 1302.26(A) (emphasis added).

(4:14CV0974)

calls "directly on point" (ECF No. 21 at PageID #: 153)—confirms that if "the express warranty

is not incorporated into the written contract, it 'must be shown to be part of the bargain of the

parties.'" *Id.* at 496 (citing *Price Bros. Co. v. Phila. Gear Corp.*, 649 F.2d 416, 422 (6th Cir.

1981)).

Furthermore, nothing in the 2006 White Paper even purports to discuss the future

performance of Defendant's air conditioners.  The statement that Plaintiff quotes in ¶ 39 of the

Class-Action Complaint (ECF No. 1), which appears in a caption below a photo on ECF No. 23-

1 at PageID #: 199, reveals that Defendant is not warranting that Plaintiff will not experience

leaks due to formicary corrosion.  On its face, the statement has nothing to do with formicary

corrosion.  First, the caption begins by stating that "**[e]very unit is checked for coil leaks**"

during the manufacturing process (bold in original).  Second, the caption describes how

"[s]pecially designed service valves ensure against leaks."  As such, it is plain that this caption

addresses how Carrier tests every unit for leaks as part of its manufacturing process and how

Carrier's "specially designed service valves" prevent the leaks—it is not a statement warranting

against future leakage caused by formicary corrosion.

Plaintiff's arguments that Defendant's warranty extended to "future performance of the

goods" under Ohio Rev. Code § 1302.98(B),[4] so that the limitations period would not begin

---

[4] "A breach of warranty occurs when tender of delivery is made, *except* that
where a warranty explicitly extends to future performance of the goods and discovery of
the breach must await the time of such performance, the cause of action accrues when the
breach is or should have been discovered."  Ohio Rev. Code § 1302.98(B) (emphasis
added).

8

(4:14CV0974)

to run until later (ECF No. 21 at PageID #: 152-54), are unavailing.  A limited warranty, like the

one offered by Defendant in the case at bar, is valid, enforceable, and does not extend to the

product's future performance.  The exception is "construed narrowly, and courts have been 'very

harsh in determining whether the warranty explicitly extends to future performance.'"  *Miles v.*

*Raymond Corp.*, 612 F. Supp.2d 913, 926 (N.D. Ohio 2009) (Lioi, J.) (quoting *Standard Alliance*

*Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 820 (6th Cir. 1978)).  "[M]ost express

warranties cannot meet the test."  *Id.*

Repair-and-replace clauses, like the one in Defendant's warranty, are routinely held not to

constitute promises of future performance.  *See Allen v. Andersen Windows, Inc.*, 913 F. Supp.2d

490, 501 (S.D. Ohio 2012) ("Ohio federal and state courts hold that a promise to repair or replace

defects for a specified time period is simply a *remedy* for the buyer and not a promise of future

performance" sufficient to invoke § 1302.98(B) (emphasis in original)); *Allis-Chalmers Credit*

*Corp. v. Herbolt*, 17 Ohio App.3d 230, 237 (1984) (finding that a promise by the seller of goods

to repair and replace defective parts for one year "is not a warranty extending to future

performance under R.C. 1302.98, but is a remedy").  The very treatise on which Plaintiff relies,

*see* ECF No. 21 at PageID #: 151 explains why:

> To fall within the § 2-725(2) exception, the warranty must make reference to a
> time in the future that extends past the date of tender of delivery.  *However, just*
> *because the warranty mentions a period of years, it does not necessarily extend to*
> *the future performance of the goods.*  If the warranty says, "Our widgets are
> guaranteed for five years from the date of sale; they will not malfunction at any
> time during that period," then the warranty explicitly extends to the future
> performance of the goods . . . .  However, suppose the warranty says, "Our
> widgets are guaranteed.  If they malfunction within five years from date of sale,
> we will repair or replace them at our expense."  This warranty explicitly extends
> to the future performance of the warrantor.  The time period relates only to the

9

(4:14CV0974)

> remedy. *The warranty does not say that the widgets will not malfunction, but that the warrantor will resolve the problem in a certain way for a limited time if they do malfunction. Since the language concerning time focuses on the remedy to be given by the warrantor, rather than the future performance of the goods themselves, the § 2-725(2) exception does not apply.*

2 The Law of Prod. Warranties PRODWARR § 11:4.

Plaintiff relies on *Standard Alliance*, 587 F.2d at 821, for the proposition that repair-and-replace language does warrant future performance. ECF No. 21 at PageID #: 153 n. 8. Since the Ohio Court of Appeals in *Allis-Chalmers* considered and rejected the Sixth Circuit's reasoning in *Standard Alliance*, the reasoning of *Allis-Chalmers* has been consistently applied by state and federal courts. *See Allis-Chalmers*, 17 Ohio App.3d at 237 ("[A]ll promises are not warranties. . . . Here, the promise required that the seller's conduct conform to the promise, not that the product's performance conform to the promise. Accordingly, we find that the repair or replace language is not a warranty extending to future performance under R.C. 1302.98, but is a remedy.") *See also Allen*, 913 F. Supp.2d at 501; *Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp.2d 545, 551 (N.D. Ohio 2006) (Boyko, J.) (discussing *Standard Alliance* and *Allis-Chalmers* and finding manufacturer's obligation to "repair or replace" defective products was not a warranty that extended to future performance of the goods).

**B.      Plaintiff Cannot Toll the Statute of Limitations by Arguing that Defendant Breached its Repair-and-Replace Obligations Under the Limited Warranty**.

Notwithstanding that Plaintiff received a new, non-defective evaporator coil under the warranty, she still argues that her claim is timely because Defendant breached its obligations by failing to replace the coil on "the first warranty service call" in May 2013. ECF No. 21 at PageID #: 152. Specifically, she accuses Carrier of replacing her evaporator coil only "after

10

(4:14CV0974)

much foot dragging at Plaintiff's expense" and after "kick[ing] the can down the road until it fail[ed] again" ECF No. 21 at PageID #: 155-56. This, she claims, shows the warranty failed in its essential purpose. But this is a new claim that Plaintiff did not specifically allege in the Class-Action Complaint (ECF No. 1). Nor has she alleged any facts to support it. *Justice v. Rheem Manufacturing Co.*, No. 9:14-cv-80017-WPD, slip op. at 8 (S.D. Fla. Aug. 22, 2014) (ECF No. 23-2) ("[t]hese allegations exhibit a *functioning warranty that led to repairs*, rather than a warranty that failed to provide Plaintiffs with meaningful recourse whenever their Rheem ACs ceased cooling," and "[t]hus, the essential purpose doctrine does not render the warranty void.") (emphasis added). Similarly, the *Justice* decision confirms that a warranty like the one Defendant provided to Plaintiff in the case at bar is not "unconscionable" as a matter of law. *Id.* at 10 ("The warranty requires Rheem to repair or replace any part that 'fails in [its] normal use and service.' . . . Those terms do not create an outrageous degree of unfairness for purchasers of Rheem Acs.") (brackets in original). This is true in the case at bar, especially given that Plaintiff's copper coil was replaced with a non-copper coil and she has made no further warranty claims.

**C.    Plaintiff Has Failed to Plead Facts Sufficient to Establish Equitable Estoppel.**

Plaintiff argues that equitable estoppel tolled the statute of limitations. ECF No. 21 at PageID #: 154-55. Under Ohio law, she must prove four elements to invoke estoppel: 1) that the defendant made a factual misrepresentation; (2) that the misrepresentation misled the plaintiff; (3) that the misrepresentation induced the plaintiff to justifiably rely on it by delaying the filing of the action until after the expiration of the statutory period; and (4) that the reliance caused

11

(4:14CV0974)

detriment to the plaintiff.  *JRC Holdings, Inc. v. Samsel Servs., Co.*, 166 Ohio App.3d 328, 335 (2006).  "Ohio cases have held that when applied to a limitations defense, a plaintiff must show that the defendant misrepresented the length of the limitations period, promised a better settlement if the plaintiff did not bring suit, or made similar representations to induce a delay in bringing suit."  *Allen*, 913 F. Supp.2d at 510 (citing *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 246 (2000)).

While Plaintiff alleges that Defendant concealed the alleged defect (ECF No. 1 at PageID #: 18, ¶ 73), and that Carrier misrepresented the cause of her problems (ECF No. 1 at PageID #: 18, ¶ 74), there is no allegation that Defendant said anything "calculated to induce [her] to forgo the right to sue."  *Allen*, 913 F. Supp.2d at 511 (citing *Hoeppner v. Jess Howard Elec. Co.*, 150 Ohio App.3d 216, 225 (2002)).  Indeed, as the *Allen* court held, an allegation that the defendant "made a misrepresentation that induced her to *forgo filing suit*" is "the sine qua non of equitable estoppel."  *Id.* (emphasis in original).  Otherwise put, Plaintiff fails to allege that which her claim to equitable estoppel necessarily depends.

**D.  Plaintiff Cannot Recover for Economic Loss in Tort (Counts II, III, and IV) or Equity (Count VI) Where She Had a Contractual Remedy.**

Plaintiff's claims sounding in tort and equity likewise fail as a matter of law.  Courts applying Ohio law hold that where a contract spells out the parties' rights and responsibilities in a transaction for the sale of goods, parties seeking economic loss only must seek their recovery under the UCC's contractual remedies, not in tort or equity.  *See Integrated Molding Concepts, Inc. v. Stopol Auctions*, No. 1:07CV2617, 2007 WL 3001385, at *5 (N.D. Ohio Oct. 11, 2007) (Gaughan, J.) ("[U]nder Ohio law, the existence of a contract claim generally excludes the

12

(4:14CV0974)

opportunity to present the same case as a tort claim.") (citing *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1986)).

Plaintiff's attempts to distinguish Ohio's economic loss doctrine, and to cite Ohio law allowing the pleading of unjust enrichment claims in the alternative, both fall short because the cases on which she relies involve situations in which either there was no contract, or the existence of a contract was in dispute. When a plaintiff has alleged the existence of a contract, that contract—not common law causes of action—provides her exclusive remedy. *See Baumgardner v. Bimbo Food Bakeries Distribution, Inc.*, 697 F. Supp. 2d 801, 816 (N.D. Ohio 2010) (Lioi, J.) ("While alternative pleading of unjust enrichment and breach of contract can be permissible, it is inappropriate in situations, like the one presented here, where the complaint 'sets forth no plausible basis to invoke unjust enrichment because there is no dispute that' the Distribution Agreement is valid and that the conduct complained of is explicitly covered by that express contract.").

Plaintiff's claim for the equitable remedy of unjust enrichment (Count VI) fails for two reasons. First, Ohio law does not permit recovery in equity where a contract provided the plaintiff with a remedy. *See, e.g., Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 825 (6th Cir. 2006) ("[T]o the extent the company means to argue that plaintiffs sought relief under their unjust enrichment claims in addition to the relief available under their contractual claims, no such relief is available under Ohio law."). Second, unjust enrichment is not an available remedy when a plaintiff does not make her purchase directly from the manufacturer. Plaintiff purchased her air conditioning unit from Advanced Heating, Cooling & Electric Ohio, not Defendant. Ohio

13

(4:14CV0974)

courts hold that only direct purchasers—meaning those who paid money directly to the

defendant—may bring claims for unjust enrichment.  *Johnson v. Microsoft Corp.*, 106 Ohio St.3d

278, 286 (2005); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F.

Supp.2d 942, 952 (N.D. Ohio 2009) (Gwin, J.) (concluding that Ohio plaintiffs could not

establish unjust enrichment as a matter of law because, having purchased their appliances from

retail stores, they did not allege that they had paid any money directly to the manufacturer).

**E.**    **Plaintiff's Ancillary Claims Under the Ohio Product Liability Act (Count V), for Fraudulent Concealment (Count VII), and for Declaratory Relief (Count VIII) are Also Dismissed.**

In addition to Plaintiff's time-barred claim for breach of express warranty and her implied

warranty and negligence tort claims, Plaintiff also alleges ancillary causes of action—for

failure-to-warn under the OPLA (Count V), fraudulent concealment (Count VII), and declaratory

relief (Count VIII).  All of these claims fail for reasons explained above—that Plaintiff may not

recover in tort or equity for economic losses, which stemmed from a transaction for the sale of

goods, for which she had a contractual remedy.

Plaintiff's ancillary claims also fail for independent reasons.

**1.**    **Plaintiff cannot recover for economic loss, alone, under the OPLA (Count V).**

Plaintiff's claim for failure to warn under Ohio Rev. Code § 2307.76, part of the OPLA,

is barred because the Supreme Court of Ohio holds that "although a cause of action may concern

a product, it is not a product liability claim within the purview of Ohio's product liability statutes

unless it alleges damages other than economic ones."  *LaPuma v. Collinwood Concrete*, 75 Ohio

St.3d 64, 66 (1996); *see also Holbrook v. Louisiana-Pacific Corp.*, 533 Fed. App'x 493, 497 (6th

14

(4:14CV0974)

Cir. 2013) (relying on *LaPuma* to conclude that "[b]ecause Holbrook's amended complaint

alleged only economic damages, he has not asserted a plausible claim for relief under the

OPLA.").  Plaintiff has not responded to this argument.  *See* ECF No. 23 at PageID #: 184 n. 4.

> **2.**     **Plaintiff's fraudulent concealment claim (Count VII) is not well pled because Plaintiff has not alleged the time, place, or content of either the misrepresentations on which she allegedly relied or of Defendant's active concealment.**

Plaintiff's claim for fraudulent concealment (Count VII) is also barred because her claim,

which is based in fraud, is not well pled under Fed. R. Civ. P. 9(b).  She has failed to allege

facts sufficient to support an underlying duty to disclose.  Specifically, Rule 9(b) requires that "a

party must state with particularity the circumstances constituting fraud or mistake."  Courts

interpret Rule 9(b) to require specifics regarding the time, place, and content of the

misrepresentations allegedly made to and relied on by plaintiffs.  *See, e.g.*, *Allen*, 913 F. Supp.2d

at 515 (concluding that the plaintiff did not allege "the minimum 'who, what, where, when, and

how' of any alleged misrepresentation.") (quoting *Sanderson v. HCA-The Healthcare Co.*, 447

F.3d 873, 877 (6th Cir. 2006)).

The recent *Justice* decision from the Southern District of Florida is instructive.  No.

9:14-cv-80017-WPD, slip op. (S.D. Fla. Aug. 22, 2014) (ECF No. 23-2).  In that case, the

plaintiffs alleged a claim for fraudulent concealment.  The court held the allegations, however,

fell well short of the particularity Rule 9(b) requires:

> There are no allegations—detailed or otherwise—showing that each Plaintiff
> would have chosen a different brand of air conditioner had (s)he known that
> Rheem Coils were subject to formicary corrosion, that Rheem ACs might require
> refilling refrigerant after one (1) or more years, or that Rheem ACs might require
> replacement coils after one (1) or more years.  The allegations do not show that

(4:14CV0974)

> any Plaintiff, when determining to purchase a Rheem AC, considered the components of Rheem ACs, the inclusion of Rheem Coils, the possibility of formicary corrosion, the existence of other coil technology, the average frequency or cost of repairs for Rheem ACs, or the qualities of competing products. Thus, even if Plaintiffs have adequately alleged some elements of a fraudulent concealment, the allegations are insufficient to show that Plaintiffs relied on any facts that were falsely stated or concealed by Defendant.

*Id.* at 15-16. Plaintiff's fraudulent concealment claim (Count VII) is, therefore, dismissed.

> **3.      The Court also dismisses Plaintiff's claim for declaratory relief (Count VIII) because it has dismissed Plaintiff's substantive claims.**

Plaintiff seeks declaratory relief as a remedy for her substantive claims, not as an independent basis for liability. *See* ECF No. 1 at PageID #: 28, ¶ 133. Accordingly, because the Court dismisses Plaintiff's other causes of action, there is no actual controversy left, as 28 U.S.C. § 2201(a) requires, to merit declaratory relief.

### IV.  Conclusion

Because Plaintiff's claim for breach of express warranty is time-barred and her other claims fail as a matter of law, Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 15) is granted.

IT IS SO ORDERED.

  November 21, 2014                        /s/ Benita Y. Pearson                
Date                                  Benita Y. Pearson
                                      United States District Judge

16